## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| | : | |
| | : | |
| v. | : | No. 915 C.D. 2015 |
| | : | Submitted: July 24, 2015 |
| Theodore Cash | : | |
| Appellant | : | |

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
HONORABLE ROBERT SIMPSON, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 15, 2015**

In this case involving the act commonly known as the Controlled Substances Forfeiture Act (Forfeiture Act),[1] Theodore Cash, representing himself, asks whether the Court of Common Pleas of the 39th Judicial District (Franklin County Branch) (trial court) erred in ordering the forfeiture of $1,030 in U.S. Currency and three cellular phones. Cash argues the trial court erred in: denying his request for counsel; failing to respond to two of his motions; denying his motion to vacate the judgment of forfeiture; excluding evidence in the form of bank statements and student loan documents; and, finding a nexus between the U.S. Currency and three cellular phones and any unlawful activity. Upon review, we affirm in most respects.

---

[1] 42 Pa. C.S. §§6801-6802.

## I. Background

In July 2012, Cash was charged with delivery of cocaine and criminal use of a communication facility. Several months later, Cash pled guilty to delivery of cocaine. On that same date, he was sentenced to 24 months to 60 months in a state correctional institution. As a result of the plea agreement, the criminal use of a communication facility charge was dismissed.

In May 2014, Cash, representing himself, filed a motion for return of property through which he sought the return of items seized by the Pennsylvania State Police (PSP). The specific items are: $1,030 in U.S. Currency; one HTC 4G cellular phone; one Apple iPhone; one white HTC cellular phone; one eMachines notebook computer; a notebook computer carrying pouch, clothes, and a backpack. The trial court directed the Commonwealth to file a response and scheduled a hearing on the motion.

Shortly thereafter, the Commonwealth filed an answer to the motion for return of property and a petition for forfeiture. The Commonwealth averred the items sought by Cash were seized during a traffic stop after Cash engaged in the sale of a controlled substance. The Commonwealth argued that seizure of the items was authorized under the Forfeiture Act.

The trial court subsequently held a hearing, at which the Commonwealth presented the testimony of PSP Troopers Rodney Fink and Joseph Lauricia and William G. Confer. The Commonwealth also presented several

2

documentary exhibits. Cash testified by way of video conference from a state correctional institution.

After the hearing, the trial court issued a decision in which it explained that at the hearing, the Commonwealth presented the testimony of Trooper Fink, a member of the PSP's Vice Narcotics Unit. Trooper Fink testified that on June 26, 2012, he arranged a controlled buy of crack cocaine through the use of a confidential informant (CI). The CI was to purchase the cocaine from Cash. The drug buy was arranged using a cellular phone. Trooper Fink stated that he searched the CI prior to the buy, provided the CI with $300 in prerecorded bills, and watched the CI meet with Cash for the transaction. Upon his return to Trooper Fink's vehicle, the CI provided Trooper Fink with an off-white substance (that Trooper Fink believed to be crack cocaine) which he obtained in exchange for the $300. Subsequent laboratory testing confirmed that the substance was, in fact, crack cocaine. Trooper Fink stated that after the controlled drug buy, he and the other officers maintained surveillance of Cash and learned that Cash had an outstanding parole warrant.

The Commonwealth also presented the testimony of Trooper Lauricia, who testified he performed a traffic stop of Cash's vehicle and searched him incident to the arrest on the outstanding parole warrant. The search yielded $1,330 from Cash's person, which included the $300 in prerecorded buy money used in the drug transaction. Trooper Lauricia learned that the vehicle Cash drove was a rental vehicle. A search of the vehicle uncovered three cellular phones in the

3

center console and a notebook computer. Trooper Lauricia seized the items and the $1,330.

Trooper Fink testified it was common for individuals involved in illegal drug activities to have several "burner phones," which are used to facilitate those activities. Certified Record (C.R.), Item No. 26, Tr. Ct. Hr'g, Notes of Testimony (N.T.), 7/31/14, at 29. The cellular phones were provided to the Franklin County Drug Task Force for analysis, and the other items were maintained at the Chambersburg Police Department.

The Commonwealth also presented evidence from Trooper Confer, PSP's evidence custodian at the PSP barracks in Chambersburg. Trooper Confer testified that generally, upon the conclusion of a case, police arrange for seized property to be destroyed. Trooper Confer testified there are specific rules that govern the destruction of seized property. He stated that pursuant to PSP's policies and procedures, once a destruction order is submitted, the property is destroyed. Trooper Confer testified that the notebook computer, backpack and clothing seized during the traffic stop as well as the crack cocaine were destroyed pursuant to PSP regulations and procedures.

For his part, Cash testified he purchased the items seized with financial aid he received for his enrollment at Reading Area Community College. He also testified he made monthly payments for the cellular phones seized. Cash attempted to present a document regarding his financial aid and a few pages of a bank statement; however, the trial court sustained the Commonwealth's objections

4

to the admission of these documents. On cross-examination, Cash admitted that, on the date of the traffic stop during which the items were seized, he was arrested on an outstanding parole warrant that was issued after he absconded from a halfway house after he was ordered to return to a state correctional institution for a parole violation. He further testified that, after he absconded, which was three months before the traffic stop, he was not employed. Cash also testified he pled guilty to selling crack cocaine to the CI.

Based on the evidence presented, the trial court first determined the $1,030 was subject to forfeiture. The trial court stated that, pursuant to Section 6801(a)(6) of the Forfeiture Act, when currency is found "in close proximity" to controlled substances that are unlawfully possessed, such currency is rebuttably presumed to be proceeds derived from the sale of a controlled substance in violation of the Forfeiture Act. The trial court explained the Commonwealth bore the initial burden of proving forfeiture was appropriate under Section 6801(a)(6). In order to meet that burden, the Commonwealth was required to establish, by a preponderance of the evidence, that a nexus existed between the money seized and a violation of the Controlled Substance, Drug, Device and Cosmetic Act[2] (Drug Act). See Commonwealth v. $6,425.00 Seized from Esquilin, 880 A.2d 523 (Pa. 2005).

Once the Commonwealth meets its initial burden of showing a nexus exists between the seized property and the illegal drugs by a preponderance of the evidence, the burden shifts to the forfeiture claimant to rebut the presumption that

_____

[2] Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §§ 780–101–780–144.

5

the money is forfeitable. Id. Pursuant to 42 Pa. C.S. §6802(j), in order to rebut the presumption, a forfeiture claimant must establish: (1) he owned the money; (2) he lawfully acquired it; and, (3) it was not unlawfully used or possessed by him. Id.

Here, the trial court stated that, in his written submissions, Cash alleged that he withdrew $1,300 from his bank account in order to buy a car outside of Chambersburg. In support, he attached to his filing a bank statement showing a June 12, 2012 withdrawal of $1,300. Further, Cash claimed the money deposited into his bank account was financial aid in the amount of $4,500. He maintained there was an insufficient nexus between the money seized and any alleged criminal activity, and the money was not income from illegal activity.

Rejecting Cash's assertions, the trial court explained the Commonwealth presented evidence that, upon Cash's arrest, he was searched and police recovered the $300 in prerecorded buy money that was previously given to the CI. An additional $1,030 was found on Cash's person. The Commonwealth's evidence indicated all the money was bound together in the same pocket, except for thirteen one-dollar bills. The trial court stated the Commonwealth met its initial burden of showing the forfeiture of the $1,030 was appropriate as the money was in close proximity to a drug transaction and was on Cash's person with $300 of prerecorded buy money.

The trial court further stated Cash did not adequately rebut the presumption that forfeiture was appropriate. The trial court rejected Cash's explanation that he withdrew the money seized two weeks earlier in order to

purchase a car. Moreover, the trial court explained, the fact that police did not observe enough sales to account for the total amount of money in Cash's pocket did not mean the money could not be related to other drug transactions. Esquilin. As a result, the trial court found the $1,030 was in close proximity to the unlawfully possessed crack cocaine, and Cash did not rebut the presumption that the money was forfeitable.

As to the three cellular phones, the trial court explained that, similar to the forfeiture of money, in order to forfeit property, the Commonwealth must prove a nexus exists between the unlawful activity and the property subject to forfeiture. Commonwealth v. 1999 Lexus ES300 (Pa. Cmwlth., No. 1984 C.D. 2008, filed May 14, 2009), 2009 WL 9099777 (unreported) (citing Commonwealth v. Mitchell, 833 A.2d 1220 (Pa. Cmwlth. 2003)). The Commonwealth must show, by a preponderance of the evidence, that a nexus exists between the property and a violation of the Drug Act. Id. The Commonwealth may meet its burden through circumstantial evidence; it need not produce evidence directly linking the seized property to the illegal activity in order to show the requisite nexus. Id.

Again, similar to forfeiture proceedings involving money, once the Commonwealth meets its initial burden of showing, by a preponderance of the evidence, a nexus between the property at issue and the illegal activity the burden shifts to the forfeiture claimant to show the property is not forfeitable. 42 Pa. C.S. §6802(j); Commonwealth v. One (1) 1974 Chevrolet Box-Type Truck, 559 A.2d 76 (Pa. Cmwlth. 1989).

7

The trial court found the Commonwealth met its burden of proving a nexus between the cellular phones and the unlawful activity. At the hearing, PSP Trooper Fink testified that it is common for individuals involved in illegal drug transactions to use multiple phones. The use of multiple phones, also known as the use of "burner phones," allows perpetrators to better hide their illegal activities from authorities. In addition, Trooper Fink stated police observed Cash use a cellular phone to arrange a cocaine delivery. Thus, the trial court stated, the Commonwealth met its burden of proving a nexus between the three cellular phones and the unlawful drug activity.

Moreover, the trial court rejected Cash's assertions that the Commonwealth failed to prove a nexus between the cellular phones and the unlawful drug activity. As a result, the trial court determined the Commonwealth proved, by a preponderance of the evidence, a nexus between the unlawful activity and the three cellular phones found in the rental car; thus, forfeiture was proper.

However, as to the notebook computer, the notebook computer carrying pouch, the backpack and the clothing seized, the trial court determined the Commonwealth did not prove the requisite nexus.

Consequently, the trial court granted in part and denied in part Cash's motion for return of property and granted in part and denied in part the Commonwealth's forfeiture petition. Cash appealed to the Superior Court, which transferred his appeal to this Court. After his appeal, the trial court directed Cash to file a concise statement of the errors complained of on appeal, which he did. In

8

response, the trial court issued a supplemental opinion pursuant to Pa. R.A.P. 1925(a).

Thereafter, Cash filed a motion for appointment of counsel. The trial court denied the motion based on the Pennsylvania Supreme Court's holding that an indigent forfeiture claimant did not have a constitutional right to counsel in a civil forfeiture case under the Forfeiture Act. See Commonwealth v. $9,847.00 U.S. Currency, 704 A.2d 612 (Pa. 1997). However, the trial court granted Cash's motion requesting a copy of the transcript of the forfeiture hearing, and his motion seeking leave to proceed *in forma pauperis*.

Also, after filing his appeal, Cash filed a motion requesting a hearing to determine the equitable amount he should receive based on the destruction of the items the trial court ordered returned to Cash. The trial court denied the motion on the ground that Cash's prior appeal of the trial court's order divested it of jurisdiction. This matter is now before us for disposition.

## II. Issues

On appeal,[3] Cash argues the trial court erred in: (1) denying his request for counsel; (2) failing to respond to two of his motions; (3) denying his motion to vacate the judgment of forfeiture; (4) excluding evidence in the form of bank statements and student loan documents; and, (5) finding a nexus between the $1,030 and the three cellular telephones and any unlawful activity.

---

[3] Our review in an appeal from a forfeiture proceeding is limited to examining whether findings of fact made by the trial court were supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. Commonwealth v. 605 University Drive, 104 A.3d 411 (Pa. 2014).

9

### III. Discussion
### A. Appointment of Counsel

Cash first asserts the trial court erred in denying his motion for appointment of counsel. Citing $9,847.00 U.S. Currency, the trial court stated that, under the Due Process Clause of the Fourteenth Amendment, an indigent forfeiture claimant does not have a right to appointment of counsel in a civil matter under the Forfeiture Act. Cash disagrees. He contends if an indigent person who is incarcerated and at a severe disadvantage is not afforded counsel, there is nothing to prevent prosecutors from taking advantage of the situation and essentially "bullying" an individual who lacks an understanding of the law. Br. for Appellant at 1. Cash argues the Equal Protection Clause, applicable in both civil and criminal cases, should apply here. He asserts the Constitution protects life, liberty and property. Merely because an individual lacks the finances to afford an attorney, he should not be placed at a severe disadvantage based on his ignorance of the law. See Lee v. Habib, 424 F.2d 891, 901 (D.C. Cir. 1970). We reject this argument for several reasons.

First and foremost, as Cash points out, he did not seek appointment of counsel until *after* the trial court's July 2014 hearing *and after* the trial court issued its forfeiture order in September 2014. Further, at the outset of the hearing, the trial court confirmed that Cash intended to proceed on his own accord, and Cash raised no objection to proceeding without counsel and representing himself at that time. N.T. at 2. Indeed, in his concise statement of errors complained of on appeal, Cash admitted he did not request counsel. C.R., Item No. 27 at 2. Thus, Cash waived the issue that he was entitled to appointment of counsel. See Pa.

10

R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for the first time on appeal).

In any event, even if not waived, as the trial court correctly recognized, our Supreme Court recently reiterated that "although *in rem* forfeiture proceedings must comport with due process of law, property interests are generally afforded less due process protections than liberty interests. Consequently, there is no constitutional right to the appointment of counsel in a forfeiture proceeding." Commonwealth v. 605 University Drive, 104 A.3d 411, 426 (Pa. 2014) (citing $9,847.00 U.S. Currency) (emphasis added).

Further, while Cash briefly mentions the Equal Protection Clause, he does not clearly develop an argument as to how the denial of his motion for appointment of counsel violates his equal protection rights. To that end, Lee, the case cited by Cash, addresses the issue of whether indigent litigants are entitled to free transcripts. Further, although the D.C. Circuit Court discussed equal protection principles in Lee, it declined to decide the case on constitutional grounds, turning instead to an analysis of statutory law to resolve the question of an indigent litigant's entitlement to a transcript. As a result, Lee would not compel the result Cash seeks. Thus, even if Cash properly preserved this issue, his argument fails.

### B. Alleged Failure to Answer Motions

In his second issue, Cash states:

IN the matters complained of on appeal appellant claimed the the [sic] courts errored [sic] by not answering

11

his request for transcripts and his request fro [sic] appointment of counsel[.] The appellant waves [sic] this issue due to the fact the courts did respond to both request [sic] Therefor [sic] the alleged failure to answer motions claim is waived.

Appellant's Br. at 2.

In its Pa. R.A.P. 1925(a) Opinion, the trial court explained it did not fail to respond to Cash's motion for appointment of counsel and his transcript request. Rather, the trial court denied Cash's motion for appointment of counsel based on the Supreme Court's decision in $9,847.00 U.S. Currency, and it granted Cash's request for the forfeiture hearing transcript based on Lee. In the absence of any clear explanation from Cash as to how the trial court's orders were insufficient to resolve these motions, we discern no error in this regard.

## C. Motion to Vacate

Cash next contends that he raised certain due process violations in his motion to vacate judgment of forfeiture. First, he argued the district attorney's office waited almost two years to file a forfeiture petition and advanced no reason for the untimely delay. See United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency, 461 U.S. 555 (1983) (due process clause protects individuals from prejudicial delays in forfeiture cases). Additionally, Cash argues the district attorney's office had already commenced forfeiture proceedings, without proper authorization, by destroying certain items that were ordered returned to him.

12

First, as to Cash's claim regarding the timing of the Commonwealth's forfeiture petition, while Cash raised this issue in his answer to the Commonwealth's forfeiture petition, C.R., Item No. 17 at 3-4, he made no mention of this issue at the forfeiture hearing. C.R., Item No. 26. Thus, he did not clearly alert the trial court that this was an issue he wished to pursue. As a result, it is not surprising that the trial court did not address this issue.

In any event, assuming Cash's issue regarding the timing of the Commonwealth's forfeiture petition was properly preserved, Cash's argument fails. To that end, the Commonwealth was required to file its petition for forfeiture within two years of when police confiscated the items from Cash. See Commonwealth v. Allen, 107 A.3d 709, 721-22 (Pa. 2014) (Todd, J., dissenting) (pursuant to 42 Pa. C.S. §5524(5), an action upon a statute for a forfeiture must be commenced within two years). Here, police arrested Cash and seized the items at issue on June 26, 2012. See N.T. at 14-18, 32-34. The Commonwealth filed its forfeiture petition on June 4, 2014. C.R., Item No. 15. This filing was within the required two-year period. As such, the Commonwealth's forfeiture petition was timely. Cash's argument to the contrary fails.

Further, as to Cash's claim regarding the destruction of items the trial court ordered returned to Cash, three weeks after Cash filed his notice of appeal, he filed a motion, titled "In the Matter of Property." C.R., Item No. 28. Through that motion, Cash noted that, after the forfeiture hearing, the district attorney's office indicated the seized items that the trial court ordered returned were destroyed

13

pursuant to PSP procedure. As a result, Cash sought a hearing to determine the amount he should be reimbursed for these items.

In response, the trial court issued an order denying Cash's motion, explaining that, because Cash had already filed his notice of appeal, the trial court lacked jurisdiction to proceed until after the final disposition of Cash's appeal. We discern no error in the trial court's determination.

To that end, subject to certain exceptions not applicable here, Pa. R.A.P. 1701(a) states: "After an appeal is taken … the trial court … may no longer proceed further in the matter." Id. Based on Pa. R.A.P. 1701(a), we agree with the trial court that Cash's filing of a notice of appeal divested the trial court of jurisdiction to act on Cash's subsequent motion seeking a hearing regarding the destruction of the items the trial court ordered returned to Cash. Thus, the trial court correctly determined it could not act on Cash's motion. See 20A G. RONALD DARLINGTON ET AL. PENNSYLVANIA APPELLATE PRACTICE §1701:3 (2014-2015 ed.) (citing Richland Twp. v. Prodex, Inc., 646 A.2d 652 (Pa. Cmwlth. 1994) (where appellant appealed judgment of contempt and also filed motion to open or strike judgment, which trial court did not rule on, this Court noted trial court could not act on appellant's motion to open or strike judgment because, once appeal was filed, trial court no longer had jurisdiction)). As a result, we vacate the trial court's order denying Cash's "In the Matter of Property" motion, without prejudice to Cash's ability to reapply for the same relief.

## D. Evidentiary Rulings

Cash also takes issue with the trial court's exclusion of his proffered bank statement and student loan document, asserting, in the entirety:

> [Cash] avers that the bank statement and student loan papers that he submitted should have been allowed to be submitted into evidence. [Cash] again returns to the issue of not having an attorney appointed to repersent [sic] him[.] And the district attorneys [sic] office taking advantage of the situation. [Cash] did not go to law school nore [sic] does he have a degree in law so how could he know that in order to submite [sic] documnets [sic] to the court they had to be authenticated[.] [Cash] was proceeding pro ,se [sic] so some levele [sic] of leinency [sic] should have been afforded to him. SEE. exhibits A. B. C. [Cash] argues [sic] that the documents that he submitted [sic] where [sic] in fact revelant [sic] to the proceedings in question because they demonstrated where he recived [sic] the money to purchase the phones in question and to when he withdrew the money in question from the bank. Also sence [sic] the district attorney states that [Cash] had no means of financial support. They demonstright [sic] how he was supporting him self [sic].

Appellant's Br. at 3.

"The admission or exclusion of evidence is within the sound discretion of the trial court ... [and][t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." Dep't of Gen. Servs. v. U.S. Mineral Prods. Co., 927 A.2d 717 (Pa. Cmwlth. 2007), aff'd, 956 A.2d 967 (Pa. 2008).

Here, our review of the hearing transcript reveals the trial court excluded two proffered exhibits: a past due notice for Cash's student loan and a few pages of a bank statement. However, after declining to admit the proffered

documents, the trial court proceeded to elicit testimony from Cash regarding each document. Specifically, the trial court questioned Cash concerning the amount of financial aid he received and the date he received it. N.T. at 8. The trial court also elicited testimony regarding payments Cash made to a cellular phone carrier as reflected in his bank statement. N.T. at 9-10.

In addition, in its opinion, the trial court expressly stated that Cash showed he did, in fact, withdraw $1,300 from his bank account on June 12, 2012, two weeks prior to the seizure of the money. Tr. Ct., Slip Op., 9/18/14, at 8. The trial court, however, expressly rejected Cash's claim that the purpose for the withdrawal was to purchase a car. Id. Further, as set forth more fully below, the trial court also specifically considered and rejected Cash's claim that he paid for the cellular phones from his financial aid funds. Id. at 9. Cash offers no explanation as to what additional information he sought to present through the admission of the two documents at issue. He also fails to assert any prejudice resulting from the exclusion of the two documents. Under these circumstances, we discern no reversible error in the challenged evidentiary rulings.

**E. Nexus**

As a final issue, Cash argues the trial court erred in finding a nexus between the $1,030 and three cellular phones and a violation of the Drug Act. As to the $1,030, Cash takes issue with the trial court's statement that the $1,030 was, in fact, in close proximity to the unlawfully possessed crack cocaine. In attempting to justify its decision, Cash contends, the trial court mistakenly assumed the money was present on Cash when the drug transaction occurred. Cash argues, however,

16

that the time between the transaction and the arrest was approximately five to six hours, and there was no testimony that could support the trial court's assumption. Cash also asserts, because there were no drugs found on him during the stop or the search, the "rebuttable presumption" found in Section 6801(B)(ii) of the Forfeiture Act does not apply.

As to the three cellular phones, Cash contends there is no connection directly or indirectly to any illegal transaction. See N.T. 28-29. To that end, at the hearing, Cash asked Trooper Fink if there were any records of the phone numbers used to facilitate the drug sale at issue, to which Trooper Fink replied "Yes." N.T. at 28. However, when Cash asked Trooper Fink if he had any personal knowledge as to whether any of the cellular phones Cash possessed were used to conduct the drug sale, Trooper Fink replied, "I don't know." N.T. at 29.

Cash further asserts the PSP had the phones in its possession for over two years and did not confirm whether any of the phones were in fact used to facilitate the drug transaction. Trooper Fink also indicated drug dealers normally keep their business phones separate from their personal phones, and they also use "burner" phones, which are "no contract" phones. N.T. at 29-30. Cash claims he was not obligated to a "contract phone," but he submitted a bank statement showing he made a cellular phone payment using his debit card. He asserts if the phones were "burner phones," he would not have submitted a bank statement used to pay a bill that could be traced to him.

Initially, we note, a trial court has discretion to grant or deny a forfeiture petition. Commonwealth v. One 2001 Toyota Camry, 894 A.2d 207 (Pa. Cmwlth. 2006). We will not disturb the trial court's decision absent an abuse of that discretion. Id.

Moreover, a trial court's factual findings are entitled to the same deference as those of a jury. Commonwealth v. $23,320.00 U.S. Currency, 733 A.2d 693 (Pa. Cmwlth. 1999). As fact-finder, it is the trial court's function to decide what evidence is credible and to draw any reasonable inferences from the evidence. Id.

Section 6801 of the Forfeiture Act states, in relevant part:

**(a) Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

* * * *

(6) (i) All of the following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of [the Drug Act], and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of [the Drug Act]. …

42 Pa. C.S. §6801(a)(6)(i)(A), (B).

In a forfeiture proceeding, the Commonwealth bears the burden of proving forfeiture is appropriate. Esquilin. The Commonwealth must show, by a preponderance of the evidence, a nexus exists between the money and a violation of the Drug Act. Id. A preponderance of the evidence standard is tantamount to a "more likely than not" standard. Id. at 529. The Commonwealth need not produce evidence directly linking the seized property to illegal activity in order to show the requisite nexus. Id. Also, there is no requirement that illegal drugs be present at the time of seizure; circumstantial evidence may show a party's involvement in illegal drug activity. Id.

Further, under Section 6801(a)(6)(ii) of the Forfeiture Act, "money and negotiable instruments found in close proximity to controlled substances possessed in violation of [the Drug Act] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Drug Act]." 42 Pa. C.S. § 6801(a)(6)(ii) (emphasis added). When the rebuttable presumption is triggered, "the Commonwealth satisfie[s] its evidentiary burden by using the presumption." Commonwealth v. $259.00 Cash U.S. Currency, 860 A.2d 228, 231 (Pa. Cmwlth. 2004).

Once the Commonwealth sustains its initial burden of proving a drug nexus by a preponderance of the evidence, the Forfeiture Act directs that the burden shifts to the claimant to rebut the presumption that the money is forfeitable:

> **(j) Owner's burden of proof.**—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:

19

(1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.

(2) That the claimant lawfully acquired the property.

(3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa. C.S. §6802(j). Thus, to discharge this burden, the claimant must establish that: (1) he owned the money; (2) he lawfully acquired it; and (3) it was not unlawfully used or possessed by him. Esquilin.

With regard to the required nexus and the shifting burden of proof, our Supreme Court's decision in Esquilin is instructive. There, police observed Richard Esquilin (Esquilin) standing on the sidewalk with a cohort, who made three crack cocaine sales. After the sales, Esquilin's cohort handed the buy money from two of the sales to Esquilin. Both Esquilin and his cohort were later arrested and searched. A search of Esquilin uncovered $6,425 in cash, and a search of his cohort uncovered three zip-lock packets of cocaine and $7.00 in cash. Esquilin was initially charged with criminal conspiracy and possession with intent to deliver, but the charges were dismissed. The Commonwealth filed a petition for forfeiture of the $6,425 seized from Esquilin. The trial court ordered the $6,425 forfeited, finding the Commonwealth proved a nexus between the money seized and the illegal drug transactions the police observed. It also rejected Esquilin's claim that the money was lawfully acquired.

20

On appeal, this Court affirmed in part and reversed in part. To that end, this Court reversed the finding that all of the $6,425 was used to facilitate violations, or represented the proceeds of violations, of the Drug Act. We believed it was reasonable for the trial court to conclude that, as witnessed by the officers, Esquilin was handed the money from the three drug sales, each transaction having an estimated value of $20. Thus, this Court found sufficient support for the forfeiture of $60 of the money found on Esquilin. As for the remainder, however, this Court believed there was no evidence to support the conclusion that it was connected to illegal drug dealing. Thus, we affirmed the trial court's grant of the forfeiture petition with respect to $60, but reversed as to the remaining $6,365.

On further appeal, however, our Supreme Court reversed this Court's order and reinstated the trial court's forfeiture order, explaining:

> [T]he Commonwealth's documentary evidence proved that … officers saw three typical street drug transactions, in each of which money was handed to [Esquilin's cohort] in exchange for drugs. After two of those transactions, [Esquilin's cohort] handed the buy money to [Esquilin]. Police officers subsequently apprehended two of the three drug purchasers and confiscated zip-lock packets of cocaine from each, thus proving that what had looked like drug deals in fact were. Police then arrested both [Esquilin's cohort] and [Esquilin], finding three additional zip-lock packets of cocaine and $7.00 cash on [Esquilin's cohort], and $6,425.00 in cash on [Esquilin]. All of the confiscated zip-lock packets were laboratory tested, and each was found to contain cocaine. The trial court found that this evidence sufficiently discharged the Commonwealth's initial burden of demonstrating a nexus between the money seized from appellee and illegal narcotics dealing …

21

We see no error in the trial court's finding. Although the nexus in this case may not have been sufficient to connect all of the cash directly to the drug trade (as proceeds or as facilitation) beyond a reasonable doubt, we believe it clearly was sufficient under the Forfeiture Act's preponderance standard. …

The fact that [Esquilin] and [his cohort] were observed in the actual act of dealing drugs supports the trial court's reasonable conclusion that it was more likely than not that the entirety of the money [Esquilin] held was 'furnished or intended to be furnished ... in exchange for a controlled substance … [or represents the] proceeds traceable to such an exchange,' or was 'used or intended to be used to facilitate [a] violation of [the Drug Act].' 42 Pa. C.S. §6801(a)(6)(i)(A), (B). The trial judge was not obliged to be so naïve as to assume that these three sales were the only ones [Esquilin] and [his cohort] had conducted, or intended to conduct. … The fact that the police did not personally observe enough sales to account for the total amount of money in [Esquilin's] pocket does not mean that the money cannot have been related to the drug dealing enterprise. …

Moreover, in light of the fact that [Esquilin] and [his cohort] were observed as they acted in concert, the trial court did not err in invoking the 'close proximity' rebuttable presumption which is set forth in the Forfeiture Act. … [T]he controlled substances distributed and possessed by [Esquilin's cohort] were in sufficiently close proximity to the money [Esquilin] retained—indeed, [Esquilin's cohort] was 'close enough' to [Esquilin] that he could simply hand the cash over from the sales—as to trigger the Forfeiture Act's rebuttable presumption that the money represented 'proceeds derived from the selling of a controlled substance in violation' of the [Drug] Act. See 42 Pa. C.S. § 6801(6)(ii). …

The [Commonwealth Court] panel deemed the presumption inoperable because no drugs were found on [Esquilin], and there was no specific finding that, at the

22

moment [Esquilin] and [his cohort] were arrested, they were in close proximity. …

However distant from each other [Esquilin] and [his cohort] may have been when arrested, the evidence clearly established that they were close enough during the conduct of the actual drug deals that [Esquilin's cohort]—who was in personal possession of the drugs—could simply hand the cash proceeds of the sales over to [Esquilin]—who was in personal possession of the cash. Moreover, the cash from the three sales police observed was in such intimate proximity with the rest of the cash found upon [Esquilin] that it was commingled. …

The common, overriding difficulty in the Commonwealth Court panel's approach here consists in its erroneous erection of artificial and absolutist evidentiary requirements before individual facts and circumstances may even be deemed relevant to the question of whether a nexus exists between the money and violations, or facilitations of violations, of the [Drug] Act. In adopting this absolutist approach to its reviewing function, the panel committed an error of law. For the reasons we have stated above, the trial court, properly considering the totality of the evidence and properly drawing logical inferences from the evidence presented, did not err in finding a nexus between the entire sum of cash seized from appellee and violations of the [Drug] Act.

Id. at 530-32, 533-34 (emphasis added). The Supreme Court further determined the trial court did not err in rejecting Esquilin's innocent owner defense. To that end, Esquilin presented documentary evidence in an attempt to show he obtained the money lawfully, and he withdrew the large sum of cash that he possessed two weeks before his arrest in order to pay for the restructuring of a home he purchased. The Court held the trial court did not err in rejecting these claims as not credible.

23

Here, as to the $1,030 seized from Cash, the record reveals police used a CI, who placed a call to Cash's cellular phone and arranged to meet Cash at a specified location. N.T. at 14. Police provided the CI with $300 in prerecorded buy money and kept him under constant surveillance. N.T. at 15. The CI met with Cash, entered the rented vehicle, drove around the block and returned to the same previously specified location where the CI exited the vehicle. Id. The CI returned to police where he turned over what police believed was "a sum of crack cocaine." Id. The CI provided police seven zip-lock bags containing an off-white substance. Subsequent laboratory testing confirmed the substance was, in fact, crack cocaine, which weighed two grams. N.T. at 23; Commonwealth's Exs. 2, 5.

Further, after the controlled purchase, police maintained surveillance of Cash as he travelled throughout Franklin County. N.T. at 17. After several hours of surveillance, police learned Cash had an outstanding parole warrant. Id. Police stopped Cash's vehicle, placed him in custody until the outstanding warrant was confirmed and then arrested him. N.T. at 17-18, 32. A search incident to the arrest uncovered sums of money from Cash's front pockets. N.T. at 32-33. Cash's left pocket contained thirteen one-dollar bills, and his right pocket contained a total of $1,317, comprised of two fifty-dollar bills, fifty-two twenty-dollar bills, thirteen ten-dollar bills, eight five-dollar bills, and seven one-dollar bills. N.T. at 18-19; Commonwealth's Ex. 2. Included in the $1,317 found in Cash's right pocket was the $300 in prerecorded buy money the CI gave to Cash. N.T. at 18. Cash ultimately pled guilty to delivery of cocaine and received a sentence of 24 to 60 months in prison. C.R., Item No. 7.

Based on our Supreme Court's decision in Esquilin, we discern no error in the trial court's determination that the Commonwealth proved the requisite nexus between the $1,030 cash seized and the unlawful drug sales. Specifically, similar to Esquilin, police observed Cash conduct a controlled drug sale of seven zip-lock bags of crack cocaine, weighing two grams. Further, although a subsequent search yielded no additional drugs, it did uncover $1,330 in cash in various denominations, which included the commingled $300 in prerecorded buy money Cash received from the CI. As in Esquilin, the fact that Cash was observed in the actual act of dealing drugs supports the trial court's reasonable conclusion that it was more likely than not that the entirety of the money Cash held was "furnished or intended to be furnished ... in exchange for a controlled substance … [or represents the] proceeds traceable to such an exchange," or was "used or intended to be used to facilitate [a] violation of [the Drug Act]." 42 Pa. C.S. §6801(a)(6)(i)(A), (B).

In addition, as in Esquilin, the trial court did not err in invoking the "close proximity" rebuttable presumption based on the facts presented. Indeed, the controlled substances Cash possessed and distributed were in sufficiently close proximity to the money he retained so as to trigger the Forfeiture Act's rebuttable presumption that the money represented "proceeds derived from the selling of a controlled substance in violation of the [Drug Act]." 42 Pa. C.S. § 6801(6)(ii). While Cash asserts several hours lapsed between the controlled drug sale and the subsequent search, he makes no assertion that he lawfully acquired the money during that time frame. See Appellant's Br. at 5. In fact, before the trial court he asserted he withdrew $1,300 from his bank account two weeks prior to the seizure

25

of the money.  See Tr. Ct., Slip Op. at 8.  In short, based on the facts presented, the trial court could reasonably infer that Cash had the money on him at the time he sold the crack cocaine to the CI.  See Esquilin.[4]

In his brief to this Court, Cash offers no direct response to the trial court's determination that he failed to rebut the presumption that the money represented proceeds derived from the selling of a controlled substance in violation of the Drug Act.  In any event, as in Esquilin, no error is apparent in the trial court's rejection of Cash's claim that he withdrew the money two weeks prior to the arrest and seizure in order to purchase a vehicle.  To that end, the trial court explained:

> Here, [in his written submission,] [Cash] … asserts that he withdr[ew] $1,300 from his bank with intention of buying a car outside of Chambersburg.  In support, [Cash] attached [to his filing], as his Exhibit C, a bank

---

[4] Cash also relies on Commonwealth v. Fidelity Bank Accounts, 631 A.2d 710 (Pa. Cmwlth. 1993), for the proposition that, where the Commonwealth seizes money or property and claims it is forfeitable because it constitutes proceeds traceable to drug sales under Section 6801(a)(6)(i)(A) of the Forfeiture Act, "as a matter of law, the Commonwealth cannot prove that property acquired *prior to the time that it proves that illegal activity occurred* is forfeitable …." Id. at 719 (emphasis in original).

However, the language Cash quotes from that case related to life insurance policies and a bank account that the forfeiture claimants purchased or opened prior to the date the Commonwealth was able to show the illegal drug trafficking operation at issue in that case existed.  This Court held premiums paid on the life insurance policies and funds deposited into the bank account prior to the time the Commonwealth could prove the illegal drug trafficking operation existed, had to be returned to the forfeiture claimants.  Ultimately, we remanded for a determination of whether the Commonwealth proved the existence of any payments made after the illegal drug trafficking operation began.

Here, unlike in Fidelity Bank Accounts, we are not confronted with the seizure of property such as life insurance policies or bank accounts that were acquired prior to when the Commonwealth could prove illegal drug activity occurred.  Rather, in this case the Commonwealth proved the cash seized was in close proximity to the unlawful drug activity.  Thus, Cash's reliance on Fidelity Bank Accounts fails.

26

statement showing a June 12, 2012 withdraw[al] of $1,300. …

[Cash] has not adequately rebutted the Commonwealth's presumption that the forfeiture was appropriate. [Cash's] assertion that the forfeited money was withdrawn on June 12, 2012 in order to purchase a car is problematic for two reasons. First, while [Cash] has shown that he did, in fact, withdraw $1,300 in cash from his bank account, this transaction occurred approximately 2 weeks before his June 26, 2012 encounter with police. [Cash] has not explained to this Court's satisfaction why he would withdraw a large amount of cash with the intent to purchase a car but then keep the large sum of money on his person while committing an illegal act after failing to purchase a car. Second, [Cash's] claims surrounding the $1,300 are even more questionable in light of the Commonwealth's evidence surrounding the $300 prerecorded money that the CI used to purchase crack cocaine. See [Commonwealth v. $16,208.38 U.S. Currency Seized from Holt, 635 A.2d 233 (Pa. Cmwlth. 1993)] (finding that trial court is not required to find property claimant's explanations for large sums of cash are believable). …

Tr. Ct., Slip Op. at 8-9. Thus, even if properly preserved, we discern no error in the trial court's rejection of Cash's claim.

Finally, as to the three cellular phones seized, we also agree with the trial court's determination that the Commonwealth proved the requisite nexus between those items and the unlawful drug activity. To that end, at the hearing, the Commonwealth presented evidence that, following Cash's arrest, a search of the vehicle yielded three cellular phones in the center console of the rented vehicle Cash was driving when he made the sale of crack cocaine to the CI. N.T. at 20, 33. Further, the Commonwealth presented evidence that the controlled drug buy was

27

arranged by way of a phone call from the CI to one of the cellular phones in Cash's possession. N.T. at 28. Moreover, PSP Trooper Fink offered testimony that drug dealers commonly use "burner phones," which are "no-contract phones [that are used] in order to hide their identity." N.T. at 29-30. Here, Cash admitted he had no contracts on any of the three cellular phones seized. N.T. at 10.

Of further note, Cash was initially charged with criminal use of a communication facility, although that charge was ultimately dismissed as a result of his guilty plea to possession with intent to deliver cocaine. See C.R., Item No. 7. Based on all of these circumstances, the trial court could reasonably conclude the Commonwealth met its burden of proving a nexus existed between the three cellular phones and the unlawful drug activity.

Moreover, in rejecting Cash's assertion that the three cellular phones did not have a nexus to illegal drug activity, the trial court explained:

> [Cash] argues that the cell phones do not have a nexus to illegal activity but does not state why he had three active cell phones. Even in today's technology-driven age, it is unusual for a single person to have three cell phones on their person, let alone in a rental car that a person is driving in by themselves. [Cash] has not given this court a legitimate reason why he would have three cell phones in his rental vehicle. Even assuming arguendo that [Cash's] cell phones were not purchased with proceeds from selling drugs and were purchased with his student loans, given his employment situation and criminal actions, [Cash's] possession of three cell phones is very suspicious. Although individuals may have a work cell phone and a personal cell phone, [Cash] didn't offer a reasonable explanation along those lines. As a result, this Court finds that the Commonwealth has, by a preponderance of the evidence, shown a nexus between

the unlawful criminal activity and all three cellular phones found in the rental car and the forfeiture of said cell phones was proper.

Tr. Ct., Slip Op. at 10-11. We discern no error in the trial court's rejection of Cash's attempt to rebut the Commonwealth's proof that a nexus existed between the three cellular phones and the unlawful drug activity. Indeed, the trial court was not required to accept Cash's explanation as credible. Esquilin.

For all the foregoing reasons, we affirm the trial court in all respects except the denial of Cash's late-filed "In the Matter of Property" motion. That latter order is vacated.

ROBERT SIMPSON, Judge

29

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
    :
        v.              :     No. 915 C.D. 2015
    :
Theodore Cash,           :
            Appellant     :

## O R D E R

**AND NOW**, this 15th day of October, 2015, the order of the Court of Common Pleas of the 39th Judicial District (Franklin County Branch) is **AFFIRMED** in all respects except as to the denial of Appellant's late-filed "In the Matter of Property" motion.  The order denying that motion is **VACATED**.


                   _____
                   ROBERT SIMPSON, Judge